UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

XEROX CORPORATION,

                             Petitioner,

                                                                                   Case No. 22-CV-6219-FPG

v.                                                                                  DECISION AND ORDER

LOCAL 14A, ROCHESTER REGIONAL JOINT BOARD,
XEROGRAPHIC DIVISION WORKERS UNITED,

                             Respondent.
_____

## INTRODUCTION

Petitioner Xerox Corporation petitions this Court to stay arbitration and moves for a declaratory judgment pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a)(c), alleging that Respondent Local 14A, Rochester Regional Joint Board, Xenographic Division Workers United impermissibly demanded arbitration of Respondent's claim that Petitioner discontinued union members' retirement benefits. *See generally* ECF Nos. 1-4. On June 27, 2022, Respondent answered, moved to dismiss Petitioner's petition, and cross-moved to compel arbitration and for injunctive relief. ECF Nos. 16-19. On July 21, 2022, Petitioner responded to Respondent's motions. ECF Nos. 24, 25. On July 28, 2022, Respondent replied. ECF No. 26. On August 28, Petitioner filed a sur-reply. ECF No. 29.

For the reasons set forth below, Petitioner's petition to stay arbitration proceedings and motion for declaratory judgment are GRANTED. Respondent's motions to dismiss, to compel arbitration, and for injunctive relief are DENIED.

## BACKGROUND

Respondent is a labor union that represents employees of Petitioner. *See* ECF No. 1. On June 11, 2018, Petitioner and Respondent executed a collective bargaining agreement ("CBA") that governed, *inter alia*, whether Petitioner may modify retiree health benefits. *Id*. at 2. It is undisputed that the CBA expired on November 30, 2021. *Id*. The parties did not extend the agreement, nor did the parties execute a successor agreement after the CBA expired. *Id*.

On December 30, 2021, Petitioner notified Respondent that it intended to discontinue health benefits to former employees that had retired before the CBA expired. *Id*. On January 7, 2022, pursuant to a Grievance Procedure outlined in Article XI of the CBA, Respondent filed a grievance at Step 3 of the procedure, alleging that Petitioner's intended action would "modify and/or terminate benefits which had accrued and/or *vested* under the agreement, causing numerous violations of the CBA, including but not limited to violations of Article VIII and any other applicable provisions." *Id*. at 2-3 (emphasis added). The Grievance Procedure provides that if a grievance is not satisfactorily settled at Step 3, the grievance may be "appealed to arbitration by either party upon written notice to the other party within sixty (60) working days from the date the Step 3 answer was delivered to an acknowledged in writing by the Business Agent." *Id*. According to Petitioner, the Grievance Procedure, was provided for current employees, not individuals that had retired before the CBA expired. *Id* at 3. According to Respondent, the arbitration provision survived the CBA's expiration because the benefits had vested for life. *Id*.

On February 25, 2022, Petitioner rejected Respondent's grievance at Step 3 of the procedure. *Id*. Petitioner claimed that Respondent's "grievance is without merit because neither the main body of the [CBA] nor the plan documents incorporated in it by reference contain clear and unambiguous language sufficient to vest benefits for life under well-established legal

precedent[.]"  *Id*.  Petitioner claimed the CBA and incorporated plan documents did not vest a retiree with health benefits for life, citing various provisions of the CBA for support.[1]  *Id*.  The incorporated plan documents that govern each applicable retiree health benefit plan provided to retirees under the expired CBA are the: (1) Xerox Medical Care Plan for Retired Employees ("Old Plan"); (2) Xerox Retiree Health Care Plan ("New Plan"); and (3) Xerox Corporation Retiree Health Reimbursement Plan ("HRA Plan").  *Id.* at 4.  Petitioner contends that the terms within each plan's documents reserve to Petitioner a right to amend, suspend or terminate the benefits provided by each plan because the CBA provides that Xerox "specifically reserves the right to amend, suspend or terminate the Plan described herein at any time and for any reason."  *Id*. at 4.  In short, Petitioner alleges that no provision or plan document conferred or vested retiree benefits after expiration of the CBA.  *Id*.

On March 2, 2022, Respondent demanded arbitration of the grievance after its rejection at Step 3 of the Grievance Procedure.  *Id*.  Respondent contended that health benefits for retirees had vested beyond the expiration of the CBA.  *Id*.  On March 20, 2022, Petitioner rejected Respondent's request for arbitration, stating that "the company declines to arbitrate the grievance [because] […] the collective bargaining agreement expired on November 30, 2021.  Accordingly, there is no arbitration provision currently in effect."  *Id*.

On April 14, 2022, Respondent notified Petitioner of its intent to arbitrate the grievance and further requested that Petitioner submit the grievance to arbitration.  *Id*. at 5.  To date, Petitioner has not participated in Respondent's requested arbitration.  *Id*.

---

[1] For example, Article VIII(N)(1) of the CBA provides "Eligibility for retirement and provision of benefits for retirees are set forth in Schedule H.," and Schedule H as referenced in Article VIII(N)(1), provides that "This Schedule is intended as an outline only and the benefits described are subject to the detailed terms and conditions of the actual plans or contracts, as well as to the provisions of applicable state and federal laws."  *Id*.

**LEGAL STANDARD**

Section 301 of the Labor Management Relations Act ("LMRA") grants federal courts jurisdiction over disputes between employers and labor unions that require interpretation of collective bargaining agreements. 29 U.S.C. § 185. With respect to whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance, "[u]nless the parties clearly and unmistakably provide otherwise, the question of [arbitrability] is to be decided by the court […]," not an arbitrator. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (holding that arbitrability is a judicial determination); *see also Constr. Indus. Emp's Ass'n v. Local Union No. 210, Laborers Intern. Union of N. Am., AFL-CIO*, 580 F.3d 89, 94 (2d Cir. 2009) (same).

Generally, a party's "[c]ontractual obligations will cease […] upon termination of [a] bargaining agreement." *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 207 (1991). Collective bargaining agreements, including those that establish arbitration procedures, are to be interpreted "according to ordinary principles of contract law[.]" *M & G Polymers USA, LLC v. Tackett*, 575 U.S. 427, 435 (2015). "In this endeavor, as with any other contract, the parties' intentions control." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).

Contractual rights which vested under a collective bargaining agreement will, as a general rule, survive termination of the agreement and remain subject to the agreement's terms. *See Litton*, 501 U.S. at 207. Indeed, a "collective bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration." *Id*. However, where an agreement is silent as to the duration of retiree benefits, a court generally "may not infer that the parties intended those benefits to vest for life." *Id*. at 442. Traditionally, courts "should not construe ambiguous

4

writings to create lifetime promises." *Tackett*, 575 U.S. at 441. "Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest must be found in the plan documents and must be stated in clear and express language." *Id*. Still, this rule does not preclude a conclusion that the parties' intended to vest lifetime benefits for retirees. *See id*. at 442.

## DISCUSSION

The Court must determine whether the parties' dispute over Petitioner's discontinuation of retiree health benefits, which occurred after the expiration of the CBA, is subject to arbitration under the expired agreement. For the reasons explained below, the Court concludes that it is not. Accordingly, Petitioner's petition to stay arbitration proceedings and motion for a declaratory judgment is granted and Respondent's motion to dismiss is denied.

In addition, because the Court concludes that the parties' dispute is not arbitrable, the Court need not address Respondent's cross-motion for injunctive relief. *See* ECF No. 17. Because arbitrability of the underlying dispute for which injunctive relief is requested is a predicate for such relief, Respondent's cross-motion for injunctive relief is denied as moot. *See Niagara Hooker Employees Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1376 (2d Cir. 1991).

### I.    Arbitrability

The primary issue is whether Respondent's challenge to Petitioner's modification of retiree health benefits is arbitrable. Petitioner contends that the dispute is not because (i) the CBA that required arbitration proceedings has expired; (ii) the modification occurred after its expiration; and (iii) the arbitration procedure does not govern the dispute because the health benefits in question did not vest for life pursuant to the agreement. Respondent does not dispute contentions (i) and (ii), but argues with respect to (iii) that the dispute is arbitrable because the health benefits vested

for life and, therefore, the arbitration procedure governing disputes over modification of such benefits survived the agreement's expiration. For the reasons explained below, the Court agrees with Petitioner.

As discussed, contractual obligations of parties to a collective bargaining agreement, including a duty to arbitrate, ordinarily terminate upon a collective bargaining agreement's expiration. *See Litton*, 501 U.S. at 206; *Williamsbridge Manor Nursing Home v. Local 144 Div. of 1199, Nat'l Health & Hum. Servs. Emp's Union, AFL-CIO*, 107 F. Supp. 2d 222, 225 (S.D.N.Y. 2000) (collecting cases). An arbitration provision will survive expiration of the agreement in only limited circumstances. *See Litton*, 501 U.S. at 206. A post-expiration grievance, as alleged here, survives expiration only "where an action taken after expiration infringes a right that accrued or vested under the agreement[.]" *Id*. at 205-06. If such a right vested, a grievance based on an alleged violation of that right is arbitrable. *Id*.

In this case, there is no dispute that (i) the CBA expired on November 30, 2021; (ii) Petitioner's modification of retiree health benefits occurred after expiration of the CBA on December 30, 2021; and (iii) Respondent brought its arbitration request after modification on January 7, 2022. *See* ECF No. 1. The central issue is whether the CBA vested retiree health benefits beyond the expiration of the agreement. To determine if it did, the Court must apply "ordinary principles of contract law" to the CBA and its incorporating plan documents. *Tackett*, 574 U.S. at 441.

Petitioner relies in chief upon the following language. First, the CBA includes a general durational clause that provides that the "agreement shall except as herein otherwise stated, … continue in force and effect until" the CBA's expiration. ECF No. 24 at 17. Further, Schedule H of the CBA, the schedule that governs "Benefits for Retirees and Their Dependents," states that it

is "intended as an outline […] subject to the detailed terms and conditions of the actual plans or contracts[.]" *Id*. In addition, the incorporating plan documents each include reservation of rights language that reserve to Petitioner the right to "amend, suspend or terminate each of the retiree health benefit plans "at any time and for any reason." *Id*. Petitioner contends that such language enables Petitioner to modify retiree health benefits where no "clear and express" language vests such benefits for life and the agreement and incorporating plan documents are otherwise silent with respect to vesting. *See* ECF No. 1; *Tackett*, 575 U.S. at 441

Respondent disagrees. It notes that the Old Plan and New Plan incorporating documents provide that retiree health benefits for individuals who retired before the expiration of the CBA "shall continue" until "11:59 p.m. on the day of the Retiree's *death*." ECF No. 18 at 10 (emphasis added). In addition, the same documents provide that "[i]n the event of the *death* of a Retiree while a Participant under the Plan, provided that the Eligible Dependents of such Retiree continue to make contributions under Section 3.2(b), the Eligible Dependent spouse of such Retiree shall continue as a Participant in the Plan until his or her *death*." *Id*. at 16 (emphasis added). Further, the incorporating plan documents provide that retiree health benefits will be provided until "the close of business on the day the Retiree ceases to be a Retiree." ECF No. 18 at 15. The HRA plan documents, further, provide that a benefits allowance provided by a particular program under the HRA shall be calculated with consideration of "the retiree's expected lifetime using accepted actuarial assumptions." ECF No. 17-2 at 10. Respondent's primary contention is that the inclusion of these references to retirees' death and life expectancy are sufficient to vest such benefits for life beyond the duration of the CBA. *See generally* ECF No. 18.

The Court concludes that the language Respondent relies upon does not clearly or expressly vest the benefits in question for life. In addition, absent other language that may reasonably

7

support an interpretation that the benefits vested, Petitioner's right to modify such benefits is preserved by the "reservation of rights" language referenced above.

First, Respondent's contention that the above references to benefits in relation to a retiree's "death" is equivalent to tying benefits to a retiree's lifetime beyond the expiration of a CBA is incorrect. The Second Circuit has made clear that clauses providing benefits to retirees until "a retiree's death or […] the age at which he becomes or could become eligible for Medicare . . . cannot reasonably read as binding [an employer] to vest the benefits at issue." *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. 1999). This is, in part, because a reference to a retiree's death is susceptible to the "reasonable explanation" that a retiree's death "obviates the need for [such benefits]" during the term of the controlling agreement. *Id*. at 135. In *Joyce*, the Second Circuit held that such a reference to the "death" of a retiree is insufficient to overcome the Supreme Court's admonition that an employer's commitment to vest "is not to be inferred lightly" and that it must be found in "express language [in the] plan documents." *Id*. at 135; *Tackett*, 575 U.S. at 441. Indeed, other courts have likewise concluded, and the Second Circuit has affirmed, that "until death" language is "not the functional equivalent of lifetime language" which is "stronger and more explicit" with respect to vesting and means "for life." *Kelly v. Honeywell Int'l, Inc.* 233 F.Supp.3d 302, 314 (D. Conn. 2017), *aff'd*, 933 F.3d 173 (2d Cir. 2019), citing *Grove v. Johnson Controls, Inc.*, 176 F.Supp.3d 455 (M.D. Pa. 2016), then citing *Bland v. Fiatallis N.A., Inc.*, 401 F.3d 779, 786 (7th Cir. 2005). The Court accordingly cannot conclude that the CBA and incorporating plan documents' references to a retiree's "death" compel the inference that the retiree health benefits in question vested for life.

Second, with respect to Respondent's contention that the use of a retiree's actuarily calculated life expectancy unambiguously vests the above referenced benefit program under the

HRA plan for life, the Court similarly finds this aspect of the relevant HRA plan insufficient to vest such a benefit. No case in the Second Circuit has directly addressed such a claim, but the Court concludes that HRA plan documents do not show an intent to vest such a benefit. Indeed, as the plan documents show, the above referenced life expectancy language is but one of several factors used to calculate a retiree's benefit allowance under the HRA plan.[2] Accordingly, absent "express" language providing that the benefit allowance vested for life, the Court finds that the multi-factor calculation method the HRA plan provides, when viewed within the totality of the plan, is not "capable of reasonably being interpreted" to vest such benefits for life. *Am Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 980 (2d Cir. 1997).

Moreover, in the absence of "clear and express" language in favor of vesting, the Court additionally finds persuasive the CBA's inclusion of "reservation of rights" language in reaching its conclusion that the present dispute is not arbitrable. Several courts provide persuasive authority for the conclusion that, absent other language to the contrary, a CBA's reservation of rights language will preclude a claim that retiree health benefits may have vested before the expiration of the agreement in question. *See, e.g.*, *Cooper v. Honeywell Int'l*, 884 F.3d 612, 621 (6th Cir. 2018) (concluding that "[t]he retiree medical plan itself provides a final indication that the CBA did not intend to vest retiree healthcare benefits" where the "plan also contain[ed] a reservation-of-rights clause"); *Beale v. Kraft Heinz Foods Co.*, No. 16-cv-1119, 2018 WL 2085277, at *7 (S.D.

---

[2] The program provides in pertinent part that:

> The pre-65 Benefits Allowance will be the total of three components: The Basic Allowance based on the premium of the most efficient HMO's, this amount will be capped at two times the 1995 amount; the Service Component, an amount equal to $20 times total years of service with the Company up to a maximum of 30 years; and the LifeCycle Assistance Component based on the employee's forfeited balance in the LifeCycle Assistance Program spread over the retiree's expected lifetime using accepted actuarial assumptions.

ECF No. 17-2 at 10.

9

Iowa Mar. 27, 2018) ("[A]n unambiguous reservation-of-rights provision is sufficient without more to defeat a claim that retirement welfare plan benefits vested."); *Grove v. Johnson Controls, Inc.*, 176 F. Supp. 3d 455, 479-80 (M.D. Pa. 2016) ("In conclusion, the reservation of rights language . . . is clear and unambiguous, and forecloses any notion of vesting."); *Blankenship v. Dominion Energy Transmission*, No. 2:18-cv-01208, 2019 WL 13198125, at *13 (W.D. Pa. Oct. 2, 2019) (finding reservation of rights provision "clearly and unequivocally defeats a claim that the policy contains the express language needed to effectuate a vesting of benefits").

For these reasons, the Court concludes that the retiree health benefits did not vest pursuant to the CBA and, thus, Petitioner's modification of those benefits after the expiration of the CBA is not subject to the CBA's arbitration provision.

**II.    Declaratory Judgment**

To determine whether declaratory judgment is proper, courts look to "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Read, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Here, the Court finds a declaratory judgment will clarify the issue of whether the retiree health benefits at issue vested for life and, as a corollary, whether a dispute regarding a modification of such benefits is arbitrable.

The Court accordingly concludes that (1) the CBA between the parties effective June 11, 2018 through November 30, 2021 did not vest lifetime retiree health benefits past the duration of the CBA; (2) there is no existing agreement to arbitrate the issues or claims set forth in Respondent's arbitration request; and (3) Respondent's January 7, 2022 Grievance is not arbitrable under the now-expired CBA.

## CONCLUSION

For the reasons set forth above, Petitioner's motion to stay arbitration proceedings and for a declaratory judgment (ECF Nos. 1, 2) is GRANTED. Respondent's motions to dismiss, to compel arbitration and for injunctive relief (ECF Nos. 16, 17) are DENIED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 20, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court Judge
Western District of New York