UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

XEROX CORPORATION,

                                        Petitioner,

                                                            Case # 22-CV-6219-FPG

v.

                                                            DECISION AND ORDER

LOCAL 14A, ROCHESTER REGIONAL JOINT BOARD,
XEROGRAPHIC DIVISION WORKERS UNITED,

                                        Respondent.

## INTRODUCTION

Petitioner Xerox Corporation petitioned this Court to stay arbitration and moved for a declaratory judgment pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), (c), in response to a demand to arbitrate by Respondent Local 14A, Rochester Regional Joint Board, Xerographic Division Workers United.  ECF Nos. 1–3.

For the reasons that follow, Petitioner's petition and renewed motions for a permanent stay of arbitration and for declaratory judgment are DENIED.  Respondent's motions to dismiss and to compel arbitration are GRANTED.

## LEGAL STANDARD

Section 301 of the LMRA grants federal courts jurisdiction over disputes between employers and labor unions that require interpretation of collective bargaining agreements.  29 U.S.C. § 185.  With respect to whether a CBA creates a duty for the parties to arbitrate a particular grievance, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Constr. Indus. Emp.'s*

*Ass'n v. Loc. Union No. 210, Laborers Int'l Union of N. Am., AFL-CIO*, 580 F.3d 89, 94 (2d Cir. 2009) (holding that arbitrability is a judicial determination).

"In deciding motions to stay or compel arbitration, 'courts apply a standard similar to that applicable for a motion for summary judgment.'" *Boroditskiy v. Eur. Specialties LLC*, 314 F. Supp. 3d 487, 492 (S.D.N.Y. 2018) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). The Court thus "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . [and] must draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229 (quotation marks, ellipses, and citations omitted).

## BACKGROUND

A full recitation of the relevant facts can be found in the Court's prior decision. *See* ECF No. 30. In brief, Respondent is a labor union that represents Petitioner's employees. ECF No. 1. On June 11, 2018, Petitioner and Respondent executed a collective bargaining agreement ("CBA") that contained, *inter alia*, a schedule that outlined the health benefits for retirees. ECF No. 1-1 at 98–101. The CBA also laid out a grievance procedure in Article XI, which, in part, states:

> **A. COMPLAINTS**
> 1. When employees have complaints, an earnest effort shall be made to settle them through discussions with their immediate Supervisors, subject to the following conditions:
>    a. Complaints shall be discussed immediately after the occurrence of the incidents which led to the complaints, or as soon as employees become aware of such incidents.
>    b. Immediate Supervisors shall give verbal answers to such complaints within two (2) working days after receiving them.
> **B. UNRESOLVED COMPLAINTS**
> 1. When complaints are not settled by the immediate Supervisors' verbal answers, such unresolved complaints shall become grievances, if the employees desire to register their complaints as grievances and appeal to Step 1 of the grievance procedure within five (5) working days after receipt of a verbal answer.

### C. GRIEVANCES
    1. Only unresolved complaints shall become grievances and such grievances shall be handled in the following sequence: [. . .]

*Id.* at 44.

Section C then outlines a four-step process for how the parties shall try to resolve complaints. *Id.* at 44–45. These steps include directions that "[if] no settlement is reached in Step 2, then the Union Business Agent may appeal such grievances to Corporate Labor Relations through the Manager of Unit Labor Relations" at Step 3. *Id.* at 45. If the parties still cannot reach a satisfactory settlement at Step 3, the grievance "may only be appealed to arbitration by either party" at Step 4. *Id.* at 45. Step 4 then states, in part, "[t]o the extent grievances arise to Step 4, the Parties will seek two (2) dates per year from both Arbitrator Eischen and Arbitrator Gross. The Arbitrator who has provided the next available date will hear cases." *Id.*

When the CBA expired on November 30, 2021, the parties did not extend the agreement, nor did they execute a successor agreement afterwards. ECF No. 1 ¶¶ 9–12. On December 30, 2021, Petitioner notified Respondent that it intended to discontinue health benefits for individuals who retired before the CBA expired. *Id.* ¶ 13. On January 7, 2022, Respondent filed a grievance "[d]irect to step 3 of the grievance procedure," claiming that Petitioner violated the CBA. *Id.* ¶ 14; ECF No. 4-3 at 2. Petitioner rejected Respondent's grievance. ECF No. 1 ¶ 18.

On March 2, 2022, Respondent demanded arbitration of the grievance, but Petitioner declined. *Id.* ¶¶ 15, 25. Subsequently, Respondent notified Petitioner of its intent to arbitrate ("Notice of Intention to Arbitrate") and requested Petitioner to submit the grievance to arbitration. *Id.* ¶ 27. However, Petitioner has not participated in the requested arbitration. ECF No. 55-1 at 7.

On May 16, 2022, Petitioner petitioned this Court to stay arbitration and moved for a declaratory judgment. ECF Nos. 1–3. Petitioner argued that the obligation to arbitrate

Respondent's class action grievance terminated upon the expiration of the CBA. ECF No. 3 at 10–14. Alternatively, Petitioner argued that there was no valid agreement between the parties to arbitrate any grievances that Respondent brought on behalf of retirees. *Id.* at 14–15. Respondent moved to dismiss Petitioner's petition, and cross-moved to compel arbitration and for injunctive relief. ECF Nos. 16–19. Finding that Respondent's grievance is not arbitrable under the expired CBA, the Court granted Petitioner's petition and motion and denied Respondent's motions. ECF No. 30. Respondent appealed. ECF No. 40.

On appeal, the Second Circuit Court of Appeals vacated the Court's order and remanded for further proceedings. ECF No. 44; *see Xerox Corp. v. Loc. 14A, Rochester Reg'l Joint Bd., Xerographic Div. Workers United*, 128 F.4th 93 (2d Cir. 2025). Following remand, Petitioner moved this Court to grant its petition and renewed motions for a permanent stay of arbitration and for declaratory judgment based on its alternative argument. ECF No. 55. Respondent cross-moved to dismiss the petition and to compel arbitration. ECF No. 56.

## DISCUSSION

In seeking a stay of arbitration, Petitioner puts forth two arguments. First, Petitioner denies any obligation to arbitrate this dispute as the parties did not agree to arbitrate Respondent's grievances brought on behalf of retirees. ECF No. 56-1 at 8–10. Second, Petitioner argues that Respondent's Notice of Intention to Arbitrate is defective. *Id.* at 11. In addition, Petitioner seeks a declaratory judgment that: (1) the CBA did not include an agreement to arbitrate grievances brought by or on behalf of retirees; (2) there is no valid agreement to arbitrate the issues or claims set forth in the Notice of Intention to Arbitrate; and (3) Respondent's January 7, 2022, grievance is not arbitrable. *Id.* at 11–12. The Court discusses each argument in turn.

### I.    Obligation to Arbitrate Grievance

Petitioner petitions this Court to stay the arbitration, claiming that Respondent's grievance is not arbitrable. *See* ECF No. 55-1. Petitioner contests Respondent's standing to file grievances on behalf of retirees. ECF No. 55-1 at 9; ECF No. 57 at 12. It further maintains that the grievance procedure under Article XI makes clear that Petitioner is not obligated to arbitrate grievances concerning retirees. ECF No. 55-1 at 8–10; ECF No. 57 at 6–11. Respondent disagrees, arguing that it does have standing to file grievances concerning retirees. ECF No. 56-1 at 4, 12–14. Respondent also claims that Petitioner's interpretation of Article XI is contradicted by the plain language of the provision, its relationship with other provisions of the CBA, and the parties' prior practice. *Id.* at 17–21. The Court will analyze each argument in turn.

### a.  Standing

Petitioner largely argues that Respondent lacks standing to bring the present action because Respondent cannot assert the rights of retirees in a dispute with a former employer. ECF No. 55-1 at 9; *see also* ECF No. 4 ¶ 16; ECF No. 4-7 at 3 ("Xerox does not recognize the Union as a representative of former employees."). Respondent disagrees, arguing that, as the party who negotiated retirees' health benefits that accrued during their employment, it has standing to file grievances to uphold the integrity of the CBA; retirees are merely third-party beneficiaries.[1] ECF No. 56 at 4–5, 13–14, 18–20; *see also* ECF No. 18 at 42. The Court agrees with Respondent.

"Standing generally has two aspects: constitutional standing, a mandate of the case or controversy requirement in Article III of the United States Constitution, and prudential

---

[1] Respondent argues that "each affected retired employee accrued a vested right" to health benefits during their employment, entitling these retirees to arbitrate claims. ECF No. 56-1 at 5. Yet, whether Petitioner has undertaken a contractual obligation to provide benefits to retirees despite the expiration of the CBA is ambiguous. This is a question of merit that this Court cannot rule on when deciding whether the parties have agreed to submit a particular grievance to arbitration. *See AT & T*, 475 U.S. at 649. Instead, as the Second Circuit directed, this issue should be reserved for the arbitrator. *See Xerox Corp.*, 128 F.4th at 112 ("If the Union's grievance is indeed arbitrable, [discerning whether the parties intended to vest retiree benefits] would be a task for the arbitrator.").

considerations of standing, which involve judicially self-imposed limits on the exercise of federal jurisdiction." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 475 (2d Cir. 2013) (brackets omitted) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 (2d Cir. 2003), *abrogated on other grounds as recognized by Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016)).

The Court first turns to constitutional standing. Constitutional standing requires the plaintiff to demonstrate: (1) "an injury in fact," which is a harm suffered by the plaintiff personally that is "concrete and actual or imminent, not conjectural or hypothetical"; (2) a "fairly traceable" causal connection "between the plaintiff's injury and the complained-of conduct of the defendant"; and (3) "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (quotation marks and citations omitted). Here, Respondent established all three elements. Respondent, a party to the CBA, will be injured by Petitioner's refusal to pay retiree benefits, which would deprive Respondent of the benefit of the bargain. This injury can be redressed by a decision declaring that the CBA obligates Petitioner to pay. *See Cookson*, 710 F.3d at 474–75 ("Because the Union was a party to the [agreement], [the employer]'s refusal to pay retiree benefits under that agreement will injure the Union by depriving it of the benefit of its bargain."); *Narcisse v. Progressive Cas. Ins. Co.*, 778 F. Supp. 3d 597, 608 (S.D.N.Y. 2025) ("In the union context, the Second Circuit Court of Appeals has likewise relied on this 'benefit of the bargain' concept. The Court of Appeals has held that a union had Article III standing to sue to enforce a union agreement that required an employer to pay benefits to retirees."). "That this benefit accrues to third parties, namely, the retirees, does not change the fact that the Union has negotiated for the benefit and has incurred obligations in order to secure it."

6

*Cookson*, 710 F.3d at 475 (citing *Frontier Commc'ns of New York, Inc. v. Int'l Bd. of Elec. Workers*, No. 07 CIV. 10327, 2008 WL 1991096, at *3 (S.D.N.Y. May 6, 2008) ("It is axiomatic that a party to an agreement has standing to sue a counter-party who breaches that agreement, even where some or all of the benefits of that contract accrue to a third party." (internal quotation marks omitted))).  Therefore, Respondent has constitutional standing.

The Court next turns to prudential standing, which considers "judicially self-imposed limits on the exercise of federal jurisdiction . . . [that] can be modified or abrogated by Congress." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (internal quotation marks and citations omitted).  29 U.S.C. § 185(a), which is applicable in this case, was adopted as part of LMRA "to promote industrial peace through the collective bargaining process by assuring the enforceability by federal courts of collective bargaining agreements between employers and labor unions." *Bldg. Indus. Elec. Contractors Ass'n v. Patriot Elec. Corp.*, No. 22-CV-07653, 2024 WL 22762, at *5 (E.D.N.Y. Jan. 2, 2024) (quoting *District 2 Marine Eng'rs Beneficial Ass'n-Associated Maritime Officers, AFL-CIO v. Grand Bassa Tankers, Inc.*, 663 F.2d 392, 396 (2d Cir. 1981)).  Respondent is a contracting party to the CBA, trying to arbitrate Petitioner's alleged violation to "vindicate its own contractual interests." *Cookson*, 710 F.3d at 47.  Respondent, a union, also satisfies the requirements of 29 U.S.C. § 185(b) that states, "[a]ny labor organization which represents employees in an industry affecting commerce . . . may sue or be sued as an entity and in behalf of the employees whom it represents in the courts[.]" *See Cookson*, 710 F.3d at 47;[2] *Frontier Commc'ns*, 2008 WL 1991096, at *4 (quoting 28 U.S.C.

---

[2] Petitioner raises a technical argument that *Cookson* "only addressed whether the union has *standing to sue* the employer in court—not bring a grievance or arbitrate." ECF No. 57 at 6–7 (emphasis in original).  Although *Cookson* did involve a case where the labor union filed a lawsuit, *see* 710 F.3d 470, "standing to sue" is not so narrow as to only allow standing to sue in court.  In fact, 29 U.S.C. § 185 also includes the right to arbitrate. *See Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Union Loc. 584, Int'l Bd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 222 F. Supp. 125, 129–30 (E.D.N.Y. 1963) (employer's state court proceeding to compel a union to arbitrate as contractually obligated was a "suit" within 29 U.S.C. § 185).  Therefore, Petitioner's argument is meritless.

§ 185(b) to hold that "[the union] has standing for the independent reason that it is specifically empowered by Section 301(b) of the LMRA to sue 'in behalf of employees whom it represents'"). Therefore, Respondent has prudential standing.

In this regard, the Court concludes that there is no merit to Petitioner's contention that "the Second Circuit has rejected the argument that a union has the right to represent retirees." ECF No. 55-1 at 9. Petitioner relies on *Schweizer Aircraft Corp. v. Loc. 1752, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.* where the Second Circuit stated, "we are doubtful that the Union has standing under the CBA to assert the rights of individual retirees in a dispute with a former employer." 29 F.3d 83, 87 (2d Cir. 1994). Petitioner's reliance is misplaced. The Second Circuit clarified that this "dicta [in *Schweizer*] . . . means only that an employer need not bargain with retirees on a collective basis." *Cookson*, 710 F.3d at 475. The Second Circuit later reaffirmed this interpretation in a case that involved a union moving to compel arbitration when the employer allegedly breached the CBA by refusing to arbitrate grievances concerning the retirees' medical insurance benefits. *Loc. Union 97, Int'l Bd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023). Specifically, it affirmed the district court's decision that found the union had standing. *Id.*, *aff'g Loc. Union 97, Int'l Bd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.,* No. 20-CV-1249, 2021 WL 3771877, at *3–4 (N.D.N.Y. Aug. 25, 2021) (holding that the union had standing). Therefore, Petitioner's argument that Respondent lacks standing to assert the rights of retirees is meritless.

For the reasons above, the Court finds that Respondent has standing.[3]

---

[3] Petitioner argues that the termination of retiree benefits only affected individuals who retired before the expiration of the CBA, not "future retirees (*i.e.*, current employees)." ECF No. 55-1 at 5. Respondent does not contest this claim. A union's basis for standing may be weakened when the only people affected by the employer's change to retiree benefits are retirees while the rights of current employees are unaffected. *See Frontier Commc'ns*, 2008 WL 1991096, at *4. However, "this difference alone would not lead [the] Court to deny standing—because a union may still sue on its own behalf." *Id.* As discussed above, Respondent may still sue to vindicate its own interests under the CBA. Therefore, the Court rejects Petitioner's argument.

### b. Arbitrability

Petitioner maintains that it has no obligation to arbitrate the particular grievance concerning the termination of retirees' health benefits that Respondent brings. ECF No. 55-1 at 5, 8–10. Petitioner claims that this is clear from the plain terms of Article XI of the CBA, which only allows "employees" to bring complaints that become grievances. *Id.* Because Article XI does not provide any avenue for retirees to grieve or arbitrate claims, Petitioner argues that Respondent, who is asserting the rights of retirees, cannot bring grievances as well. *Id.* at 9–10. Respondent disagrees, arguing that the arbitration clause under the CBA is broad and encompasses all grievances, not just employee grievances. *Id.* at 18–20. Respondent finds support for this argument in the parties' past practice of submitting a dispute about retiree benefits to arbitration. *Id.* at 20–21. Petitioner, however, asserts that such extrinsic evidence should not be considered absent ambiguity, which does not exist in this case. ECF No. 57 at 7–8. The Court analyzes each argument below.

"It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287, 296 (2010) (quotation marks and citation omitted). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id.* at 297 (emphasis in original). "Ordinary principles of contract law guide the inquiry into whether an arbitration agreement was validly formed and whether the parties consented to arbitrate a particular dispute." *Niagara Mohawk*, 67 F.4th at 113; *see also Donohue v. Cuomo*, 980 F.3d 53, 64 (2d Cir. 2020) ("Under both federal law and New York law, we interpret collective-bargaining agreements according to ordinary principles of contract law." (quotation marks, brackets, ellipses, and citations omitted)). In other words, a court may only compel arbitration where it is "satisfied that neither the formation of the parties'

9

arbitration agreement *nor . . .* its enforceability or applicability to the dispute is in issue." *Granite Rock*, 561 U.S. at 299 (emphasis in original). "In the narrow set of circumstances where a court finds that the parties have entered into a valid and enforceable agreement to arbitrate, but the agreement is 'ambiguous about whether it covers the dispute at hand,' the court may apply a 'presumption of arbitrability.'" *Niagara Mohawk*, 67 F.4th at 113 (quoting *Granite Rock*, 561 U.S. at 301).

Here, there is no dispute that there was a valid arbitration agreement between the parties. Petitioner and Respondent both agree that Section C of Article XI contains the arbitration clause. ECF No. 55-1 at 6; ECF No. 56-1 at 13. The issue then turns on whether the parties agreed to arbitrate this particular dispute concerning the health benefits of retirees. *See Granite Rock*, 561 U.S. at 299; *Niagara Mohawk*, 67 F.4th at 113.

Article XI of the CBA states, in part:

**A. COMPLAINTS**
1. When employees have complaints, an earnest effort shall be made to settle them through discussions with their immediate Supervisors, subject to the following conditions:
   a. Complaints shall be discussed immediately after the occurrence of the incidents which led to the complaints, or as soon as employees become aware of such incidents.
   b. Immediate Supervisors shall give verbal answers to such complaints within two (2) working days after receiving them.

**B. UNRESOLVED COMPLAINTS**
1. When complaints are not settled by the immediate Supervisors' verbal answers, such unresolved complaints shall become grievances, if the employees desire to register their complaints as grievances and appeal to Step 1 of the grievance procedure within five (5) working days after receipt of a verbal answer.

**C. GRIEVANCES**
1. Only unresolved complaints shall become grievances and such grievances shall be handled in the following sequence: [. . .]

ECF No. 1-1 at 44.

10

Article XI provides that employees who have complaints shall make earnest efforts to settle these complaints with their immediate supervisors. *Id.* When the supervisors' verbal answers do not settle the complaints, these unresolved complaints, and "only" these unresolved complaints, become grievances that shall be handled following a four-step sequence. *Id.* Petitioner claims that this language expressly limits grievances to be brought only by employees. ECF No. 55-1 at 9. According to Petitioner, because retirees do not have immediate supervisors to complain to, retirees cannot have unresolved complaints; and because "only" unresolved complaints can become grievances, retirees cannot grieve or invoke arbitration. *Id.* at 10.

Reviewing Article XI and the entirety of the CBA by applying ordinary principles of contract law, the Court concludes that Article XI is "ambiguous about whether it covers the dispute at hand." *Niagara Mohawk*, 67 F.4th at 113 (quoting *Granite Rock*, 561 U.S. at 301). Specifically, Article XI may be reasonably interpreted to allow Respondent, as the union, to grieve and arbitrate claims related to retirees.

First, the plain language of Article XI may reasonably be interpreted to mean that the grievance procedure does not prohibit anyone other than current employees from grieving. It is true that Sections A and B dictate how employees may bring complaints and Section C states, "[o]nly unresolved complaints shall become grievances." ECF No. 1-1 at 44. However, this does not necessarily mean that grievances only consist of unresolved employee complaints. Put simply, the grievance procedure leaves room for interpretation that grievances may also include those related to non-employees, *i.e.*, retirees.

This alternative interpretation is reasonable considering that the CBA does not contain any language excluding Respondent from grieving or arbitrating matters related to retirees. As Respondent points out, ECF No. 56-1 at 17, the omission is pronounced when considering Article

11

II.C.3. of the CBA, which discusses Petitioner's right to extend the probationary period of employees with notification to Respondent and adds, "[t]he exercise of such right shall not be subject to arbitration," ECF No. 1-1 at 14. Article II.C.3. thereby bars anyone from arbitrating disputes arising out of the extension of employees' probationary period. Had the parties intended Article XI to be so narrowly construed to only allow employees to raise complaints, grieve, and have their disputes arbitrated, they could have expressly stated so as the parties had similarly done for Article II.C.3.

Yet, no provision in the CBA, whether it be Article XI, *see id.* at 44–46, or Schedule H that describes retiree benefits in detail, *see id.* at 98–101, expressly prohibits Respondent from grieving matters related to retirees or from arbitrating them. The CBA's silence on this issue creates ambiguity that opens the provision to more than one interpretation. *See Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union Loc. 812 Int'l Bd. of Teamsters*, 242 F.3d 52, 56–57 (2d Cir. 2001) (the CBA was open to more than one reasonable interpretation because, *inter alia*, the parties could have explicitly limited the arbitration clause to employee-initiated grievances (citing *Drake Bakeries, Inc. v. Loc. 50, Am. Bakery & Confectionary Workers Int'l, AFL-CIO*, 370 U.S. 254, 259 (1962) ("[I]t appears ... reasonable to us to expect [a union strike in breach of contract], if it is indeed so fundamental and so basic to the company under the contract, to have been excluded from the comprehensive language of [the CBA arbitration clause] if the parties so intended.") and then citing *ITT World Commc'ns, Inc. v. Commc'ns Workers of Am., AFL-CIO*, 422 F.2d 77, 81–82 (2d Cir. 1970) (noting that "the parties elsewhere in the contract showed that they knew how to clearly exclude a subject from arbitration when they so desired," and holding that they ought to have done so specifically if they wished to preclude employer-initiated suits from arbitration))).

12

The interpretation that Respondent may directly grieve or arbitrate retiree benefits under Section C is further reasonable because it is compatible with other provisions of the CBA. The CBA has several provisions that discuss the right to arbitrate or raise grievances. One notable example is Article X that states, "[t]he Company, through its supervisory staff, shall maintain discipline, and the Union may challenge disciplinary action through the grievance procedure if the Union believes such action is unjustified[.]" ECF No. 1-1 at 43. Article X thus discusses Respondent's ability to grieve or arbitrate matters related to disciplinary action, regardless of whether a current employee had first brought a complaint about it. Considering its interplay with Article X, Article XI could reasonably be interpreted to allow Respondent to bring grievances or arbitrate matters that were not initiated by current employee complaints. *See also Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 263 (2d Cir. 2011) ("Under traditional principles of contract law, a contract should be construed so as to give full meaning and effect to all of its provisions." (quotation marks, brackets, and citation omitted)).[4] Therefore, when reading the CBA as a whole and giving every provision meaning and effect, Article XI may open the grievance procedure to disputes concerning retirees by allowing them to become grievances subject to arbitration.

Finally, the parties' past conduct of arbitrating retiree benefit grievances supports the interpretation that Article XI allows Respondent to grieve the same issue now. Petitioner claims

---

[4] If anything, Petitioner's interpretation of Article XI that only current employees' complaints can become grievances may be inconsistent with Article X, which grants Respondent an independent right to grieve. This incompatibility would be contrary to the ordinary principles of contract law. *See Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, No. 10 Civ. 4933, 2014 WL 11462735, at *3 (S.D.N.Y. Mar. 6, 2014) (interpreting contract language by considering the interplay between different provisions that "promot[es] a consistent reading throughout the various clauses of the document" (citing *Barrow v. Lawrence United Corp.*, 146 A.D.2d 15, 18 (3d Dept. 1989) ("Contracts are also to be interpreted to avoid inconsistencies and to give meaning to all of its terms"))). Yet, whether Article XI irrefutably allows Respondent to grieve and arbitrate matters on behalf of retirees or whether the provision is ambiguous to allow this to be one reasonable interpretation leads to the same conclusion: the grievance shall be arbitrated. Therefore, the Court need not determine whether this inconsistency renders Petitioner's interpretation of Article XI to be incorrect.

13

that extrinsic evidence, such as the parties' past dealings, cannot be considered when presented with unambiguous and clear contractual terms.  ECF No. 57 at 10–11.  However, this argument is unconvincing in light of *Niagara Mohawk*.  67 F.4th 107.  There, the Second Circuit considered "evidence that the Union has, in its own name, previously filed grievances regarding benefits the Company agreed to provide retired employees" even though it found that the grievance provision unambiguously applies to the union's grievance.  *Id.* at 117 (citing *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 438–39 (2015) (allowing consideration of record evidence from outside the four corners of a collective bargaining agreement, in accordance with "ordinary principles of contract law")).  The parties' past conduct is therefore relevant.

Here, the record shows that in 2004, the parties submitted a grievance related to "Retiree Flexible Benefit Program Pre-65 Retirees" to arbitration.  ECF No. 17-10.  The arbitration award states, "[t]he Parties jointly submitted this dispute . . . for determination in final and binding arbitration in accordance with Article XI of their 2002-2005 Labor Agreement[.]"  *Id.* at 4.  The award then provides pertinent sections of the grievance procedure, which is substantially similar to Steps 3 and 4 of the CBA in this case.[5]  *Id.*  This record indicates that the parties agreed that Respondent could bring grievances related to retiree health benefits and submit them to arbitration.[6]  Because the relevant steps of the grievance procedure between the 2002-2005 Labor

---

[5] Specifically, Step 4 of Article XI of the 2002-2005 Labor Agreement stated, "(1) If no settlement is reached in Step 3, then the Union Business Agent may appeal such grievances to Corporate Industrial Relations through the Manager, Unit Industrial Relations[.]"  ECF No. 17-10.  Step 5 then stated, "(1) In the event that a grievance is not satisfactorily settled at Step [4], notwithstanding the provisions of E., 3., 4. and 5. below, it may only be appealed to arbitration by either party upon written notice to the other party within thirty (30) working days from the date the Step 4 answer was delivered to and acknowledged in writing by the General Shop Representative[.]"  *Id.*  These are substantially similar to Steps 3 and 4 of the grievance procedure in Article XI of the CBA in this case.  *See* Background, *supra*.

[6] Petitioner argues that the dispute concerning retiree benefits was only arbitrated in 2004 based on the parties' agreement to submit the matter to arbitration.  ECF No. 57 at 11.  Petitioner argues that because no such consent exists here, the parties' past practice is irrelevant.  *Id.*  However, as discussed, the 2004 arbitration award states that the parties submitted the dispute to arbitration in accordance with the grievance procedure of the 2002-2005 Labor Agreement.  ECF No. 17-10 at 4.  Had the arbitration commenced purely based on party consent, there would not

Agreement and the CBA at hand mirror each other, the Court finds that this past practice weighs in favor of interpreting Article XI of the CBA to allow Respondent to arbitrate its grievance related to retiree health benefits. *See Niagara Mohawk*, 67 F.4th at 117 (holding that a union's grievance was arbitrable partly because past practice showed that "there is no evidence the Company refused to accept a grievance because it was filed by the Union, rather than by an employee").

In light of the above, the Court concludes that Article XI is ambiguous as it allows more than one interpretation, including that the parties may arbitrate grievances Respondent brings on behalf of retirees. This alternative construction is reasonable considering the plain language of Article XI, its compatibility with the rest of the CBA, and the parties' past practice. Because "the parties have entered into a valid and enforceable agreement to arbitrate, but the agreement is 'ambiguous about whether it covers the dispute at hand,'" the Court applies the presumption of arbitrability. *Id.* at 113 (quoting *Granite Rock*, 561 U.S. at 301); *see also Coca-Cola*, 242 F.3d at 56–57 (affirming decision to compel arbitration because while the employer's reading of the CBA was plausible, it was not the only reasonable interpretation of whether the CBA precluded certain types of complaints from arbitration).

## II.    Notice of Intention to Arbitrate

Petitioner alternatively argues that it has no obligation to arbitrate because Respondent failed to abide by Step 4 of Article XI.C. of the CBA. ECF No. 55-1 at 11. Specifically, Petitioner claims that the Notice of Intention to Arbitrate is defective as it lists two arbitrators whereas Step 4 only requires one arbitrator to oversee the case. *Id.*; ECF No. 57 at 11. Respondent disagrees, contending that its Notice of Intention to Arbitrate complies with the requirements of Article XI of the CBA. ECF No. 56-1 at 23.

---

have been the need to include the language of Steps 4 and 5 of the grievance procedure in the award. Therefore, Petitioner's argument is unpersuasive.

15

The question presented to this Court concerns procedural arbitrability as it relates to "the procedural prerequisites to arbitration." *Lockport Mem'l Hosp. v. United Pro. Nurses Ass'n*, No. 02-CV-0771A, 2004 WL 1459226, at *3 (W.D.N.Y. June 25, 2004) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). Although such questions normally go to the arbitrator, the Court will discuss the parties' argument regarding the alleged defect in the Notice of Intention to Arbitrate because the procedural question here does not "bear on [the] final disposition" of the dispute, *Jones Wiley & Sons*, 376 U.S. at 556, and because neither party argues that the question should be reserved for the arbitrator, *see Chicago Pneumatic Tool Co. v. Smith*, 890 F. Supp. 100, 123 n.44 (N.D.N.Y. 1995) (discussing the timeliness of an arbitration request even though the issue concerned procedural arbitrability because none of the parties argued that the court should decline to address the issue and because the issue was not "intimately intertwined" with the merits of the underlying dispute).

Upon reviewing Article XI, the Court does not find that the Notice of Intention to Arbitrate was defective. Step 4 states, "[t]o the extent grievances arise to Step 4, the Parties will seek two (2) dates per year from both Arbitrator Eischen and Arbitrator Gross. The Arbitrator who has provided the next available date will hear cases." ECF No. 1-1 at 45. In its Notice of Intention to Arbitrate, Respondent stated, "[the] arbitration will be conducted . . . before Dana Eischen and James Gross, pursuant to the terms of the aforementioned CBAs." ECF No. 4-10 at 2. Petitioner claims that this shows Respondent improperly selected two arbitrators. The Court disagrees.

Step 4 states that "the Parties" will seek two dates from both arbitrators, ECF No. 1-1 at 45, and Respondent indicated its understanding of the same, stating that "the parties are required to submit the dispute to both Eischen and Gross to retrieve available hearing dates from each before the case is heard," ECF No. 56 at 23. Therefore, selecting an arbitrator between the two candidates

requires the parties' joint effort.  The Notice of Intention to Arbitrate shows Respondent initiating this process and affirming the arbitrators to select from under Step 4.  ECF No. 4-10 at 2.  However, it is presumed that the selection process could not proceed due to Petitioner's refusal to arbitrate this matter, not because the notice was allegedly defective.[7]

## III.    Declaratory Judgment

Finally, Petitioner requests that the Court issue a declaratory judgment that (1) the CBA between the parties effective June 11, 2018, through November 30, 2021, did not include an agreement to arbitrate grievances brought by or on behalf of retirees; (2) there is no valid agreement to arbitrate the issues or claims set forth in Respondents' Notice of Intention to Arbitrate; and (3) Respondent's January 7, 2022 grievance is not arbitrable.  ECF No. 55-1 at 11–12.  However, because the Court finds that the grievance shall proceed to arbitration, Petitioner's request for a declaratory judgment is denied.

## CONCLUSION

For these reasons, Petitioner's petition and renewed motions for a permanent stay of arbitration and for declaratory judgment are DENIED.  Respondent's motions to dismiss and to compel arbitration are GRANTED.  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 9, 2026
Rochester, New York                     _____
                                        HON. FRANK P. GERACI, JR.
                                        United States District Judge
                                        Western District of New York

---

[7] Because the Court grants Respondent's motions to dismiss and to compel arbitration, the Court need not discuss Respondent's remaining arguments, namely: (1) that Petitioner did not raise the argument of procedural defect in its original petition; (2) that it is the CBA that mandates arbitration, not the Notice of Intention to Arbitrate; and (3) that the Notice of Intention to Arbitrate is not defective under N.Y. Civ. Prac. L. & R. § 7503(c).  ECF No. 56-1 at 21–23.